Good morning, counsel. Good morning. May it please the court. My name is Jeffrey Willens. I'm counsel for the appellant. The district court erred in granting summary judgment to the defendant in this matter for several reasons. Some of the reasons simply relate to the failure to present admissible evidence to meet the initial burden that the moving party had. And they don't require this court to reach a rather unsettled question as to an interpretation of the Federal Credit Reporting Act. Specifically, whether or not and what the phrase in connection with means in the context of obtaining someone's consumer report so you can make a promotional offer of credit. However, it's quite possible for this court to simply reverse on the grounds that the defendant failed to present admissible evidence to meet its initial burden of showing there was no basis for liability. Counsel, what about the Lee declaration? Yes, Your Honor. That is the exact issue I was going to address first. If this court agrees that the district court erred in overruling essentially my objection, my evidentiary objection, and the Lee declaration should not have been considered, then it's required to reverse because that was the only evidence they offered to support their position. But why shouldn't it be considered? The Lee declaration, I would say it this way. If this court ordered me to serve notice of something on all the other parties to this litigation, it is myself or my office that would have to prepare the proof of service under penalty of perjury. Your Honor could not state in a declaration, a sworn declaration, that my office served a document on someone without running afoul of the hearsay rule. And that's exactly what we have here. For unknown reasons, the defendant did not bring in anyone from the company that actually mailed the promotional offers. That company was called Tri-Win. Even though this is supposedly some kind of agent, maybe it was, maybe the company doesn't exist anymore. And that might be part of the problem here. Instead of bringing in a declaration from someone who actually mailed the document in question, they brought in a declaration of their own employee who was familiar with the business practices of the defendant. Not the other company, of the defendant. And who said the defendant's records apparently showed that they designed a promotional offer. And there's no question about that. That's fine. She can testify about what the promotional offer would have said. And that they said it should be mailed out to all these people on a list. Say it was a list of a thousand persons. That's fine. She can testify to that. But she didn't mail it. And there was nothing from the other company, Tri-Win, the mailing company, that said they mailed it. And there was nothing from the defendant to say, we know it was mailed because we got responses back. And there was simply, all Ms. Lee was able to say was that, based upon what our records show, it would have been mailed out. But she cannot say it was mailed out any more than you could say that my office mailed something out. Perhaps if you got it in the mail, you could say it appears my office did mail it out because you got a copy yourself. But we don't have this situation here. There's no one who said they ever received this promotional offer. No one testified. My client said she didn't recall receiving it. Now, true, it's years back, and we get tons of these kind of junk mail things all the time. So, you know, whether someone could even remember at this point is difficult to say. There's no way we can get around that problem. But they could have found someone who could attest that it was actually mailed out, and they did not. What about the business records exception? If the defendant contracted with a company to handle the promotion, and all of the promotional materials were returned to the defendant and put into their files, why wouldn't it be appropriate for someone from the defendant's company to access those records and then state that those records were given to them in the context of managing the promotional? Why isn't that a business records exception to the hearsay rule? There's several cases we cite, the Block case and the Davis case and the Shakur case, that all address this point. The problem is the business record is the defendant's record of what the promotional offer is supposed to say, and a mailing list of who's supposed to get this. So it's not that something's being returned to them. That was already in their possession. What they gave, they gave those copies, I presume, of those to try and win, if we take her at her word. And they said, mail these out to everyone, mail this to a thousand people on the list. Mail this document to a thousand people on the list. And that's all we have. So Miss Lee is saying, yes, we have a list of people we want to receive the mailing, and we have what the mailing's supposed to look like, an exemplar of it. Not the actual thing mailed, but an exemplar. OK, that's fine. But there's nothing being returned from Try-Win saying, this confirms we have mailed to the thousand people on the list. If you study her declaration carefully, you'll see there's nothing she specifically says she got anything back. Well, did she have to say that? If she said that the third-party mail house printed and mailed the firm offers, does she have to have a copy of something that was mailed? She said from her own personal knowledge. Well, that's the problem. She doesn't have any personal knowledge. The case we cite. If she attests that she has personal knowledge, how do you say she doesn't have personal knowledge? That they printed and mailed them. That was addressed in the Shakur case, which we cite, Your Honor. It specifically held that a conclusory allegation of personal knowledge does not suffice. There must be enough facts presented to explain how someone would have personal knowledge. So, yes, if she mailed it herself or someone in her company, it can be assumed from those facts she would have some basis of personal knowledge. But if an unrelated company at a different location mails something out or is told to mail something out, that does not give you enough facts to support personal knowledge. A conclusory allegation the Shakur court held is not sufficient. There has to be supporting facts. There are no supporting facts in her declaration. It was crafted very carefully not to say more than she could really say and to say what they needed to say. They put it in conclusory terms. I think there's a problem here, and that's where Rule 56 comes in. There are some cases that say, well, we're not going to scrutinize this strictly for hearsay compliance in the context of Rule 56. However, there still has to be a foundation. So there's something of a tension between what some courts say about Rule 56 and what other courts say. But the bottom line is if there's evidence that down the road there will be no problem at trial, the witness will come in and testify, some courts have let them slide on this issue of personal knowledge and the evidentiary objection under Rule 56. But the case I discuss involved the president of a company saying that, according to my employees, this is what happened. And the court basically said, well, he's a president. He's going to know what's happening in his own company. And there's no evidence someone from his own company isn't going to come testify. The problem is they've got this other company. Ms. Lee doesn't work for Tri-Win. She's not the president of the company. It doesn't have anything to do with it. But is there any evidence in the record that the defendant couldn't later present the evidence in the form admissible at trial from Tri-Win? If you have a company, we don't even know it exists. OK, all she says is it was mailed up by a company called, quote, Tri-Win. There's no evidence as to the existence of this company. There's no evidence they will show up. So the answer to your specific question is yes, if you're the president of the company, there's good reason to believe that you or your employee will be able to testify at trial. However, if you're the president of Company A, that is no basis for you saying that Company B will show up at trial. There's no relation between the two. If they can't even get a declaration from someone at this Tri-Win, then what makes you think they can have someone actually come testify at trial from Tri-Win? There must be some – Were those issues explored in the context of the summary judgment motion? I'm sorry? The issues you're raising now in terms of whether or not someone from Tri-Win could be produced or whether or not the business exists, were those issues explored in the district court? I made the objection. But these particular issues about whether or not the affidavit is admissible, is inadmissible based on the fact that Tri-Win, that there may not be an opportunity to follow up at trial with admissible evidence, was that specific issue aired in the district court? The very first time was in their opposition. So the answer is there was no opportunity to conduct any discovery on this issue. I had no idea. I'm not asking you if there was an opportunity to conduct discovery. I'm asking you, did you raise to the district court judge these precise issues about whether or not there would be the likelihood of someone from Tri-Win being able to come in at trial and give admissible evidence? Was that precise issue aired in the district court? I specifically objected on evidentiary grounds, including hearsay. That's not my question. My question is, this precise point that you're raising here today, was that precise issue raised before the district court? I did not say the specific words to the district court. I don't even recall if there was even an oral argument. This was already in their opposition. In my reply, I said, who is Tri-Win? We don't know anything about this company. But I don't know that I specifically said they wouldn't even show up. I didn't even know if they existed or not. Well, the issue is, in my mind, the issue is whether or not the affidavit should be allowed on the premise that at trial, admissible, even if we assume this is hearsay, at trial, admissible evidence could be submitted that would alleviate any concerns about hearsay. That's the issue to me. And I'm concerned that if this issue was not raised and aired at the district court, then perhaps it's not one that we should really give a lot of credence to because it was not fleshed out before the district court. Well, the problem is they only produced it in the opposition. All I had was the reply, and all I could do was argue. I couldn't prove anything in my reply. But in your reply, point me to where you made the precise argument you're making here about TriWin not even being a company and the inability of someone to come in at the trial stage to certify the information that was in the affidavit. Where is that argument made in the district court? Your Honor, I'd ask to reserve the rest of my time. I'll take a look at that during their argument and see if I can come up with anything. That's good. Thank you. We'll hear from the defense. Good morning, Your Honor. This is the police court. There's really two issues here. One is the legal issue, and the second is obviously the evidentiary issue. I'd just like to touch on briefly. I take it that you are Mr. Bergeron? I am. I'm sorry, Your Honor. Yes. Thank you. Just for the record, just introduce yourself. I'm sorry. It's Pierre Bergeron for the defendant. Okay. The legal issue, Your Honor, is there is no provision in the Fair Credit Reporting Act that creates any explicit or implicit timing limitation between pulling a credit report and the open offer of credit. And at the district court, the plaintiff initially took the position there's some 30-day provision, but we know that that's not in the statute. So they've kind of backtracked on that, and now they're arguing for a kind of more nebulous reasonableness requirement that can only be determined by a jury, which of course would provide no certainty for anyone in contravention of the statute. The statute does have timing provisions. They have 30-day timing provisions, 60-day, and even a reasonableness timing provision, but not with respect to what is being sued on here. And obviously Congress could have imposed a timing limitation if they wanted to, but they did not. So first of all, there is no timing limitation. Second of all, even if you disagreed with us on that, the willfulness standard under Safeco would say that we would have to be objectively unreasonable in our interpretation for them to obtain liability under 1681N. Well, opposing counsel's more fundamental argument is that the lead declaration should never have been considered, and in the absence of the lead declaration, there is no evidence in support of your client's position. What's your response? Sure. So on the evidentiary piece, Your Honor, the district court did not abuse its discretion in admitting the lead declaration for consideration of summary judgment for a variety of reasons. I think that what we've heard from opposing counsel today is a lot of speculation about, you know, what happens with try-when, and Judge Rawlinson, to answer your question to him about whether or not he made that conclusion, and I think the answer is no. On page 60 of the ER, he does discuss try-when, but he does not say, I don't think someone from try-when could come in and testify at trial. And, of course, they did not, you know, this wasn't a surprise how we were going to prove this up. They did not serve any discovery. They preferred to just kind of sit back and try to elevate form over substance. But addressing your point on the specifics of the lead declaration, I think that they have mischaracterized it in saying she's trying to, you know, authenticate and get admitted someone else's business records, but that's not what the declaration says. The declaration says that she reviewed access, that she's an employee of Access, which is an affiliate of Southwestern. She reviewed Access's own business records, and that those records showed the plaintiff, Mr. Darien, her address, and that the mailer was sent to her, and that her consumer report was pulled for purposes of sending the mailer, and then she attaches the two exemplar mailers to her declaration. So, I mean, this is how you prove up a defense in this respect. And at that point, the obligation shifts to the other side to either, you know, raise a dispute of fact related to that, or if they believe that she was not competent to testify on this, you know, why did they not service a discovery request or ask for her deposition? You can't sit back and just kind of speculate about what she knew or didn't know or what other records might be out there. But she, Tri-Win was the one that sent out the mailers. There's no question about that. But her own affidavit or her declaration says that Access's record shows that it was sent. So we think that that is certainly capable, even if you say, well, there may be some question about the admissibility of the declaration as it is, certainly at the time of trial you could come in and have someone produce the underlying business records to the extent that they were necessary. But this was. Mr. Bergeron, it seems to me that the argument your opponent is making is that Lee was not in a position to be able to testify that she sent the mailing. It would have to be somebody, some other organization would have had to do that. What's your response? Well, Your Honor, there's no real, I don't really understand that argument because she is in the marketing position at Access. So she is the one that oversees this entire process as explained in her declaration. So I think to get back to maybe it was a point that Judge Rawlinson made earlier, you know, it's possible that, and again, this isn't in the record, but it's possible that Tri-Win sent verification to Access and that's the basis for her knowledge. I mean, she simply testifies that based on her review of the records it was sent. So I don't really know that any more is needed than that, Your Honor. But I think that when you have someone that's performing the marketing function as Ms. Lee was, that is certainly within the realm of her knowledge. I think the case that they pointed to was when you had a clergy member testifying about how a prison operated and that just didn't make sense for that person to be testifying in that respect. But certainly, Your Honors, we believe that the Lee declaration, it was not an abuse of discretion for the court to consider that. And for all the reasons we explained on the legal issues, which I didn't really hear being challenged today, that certainly the court's decision should be affirmed, unless Your Honors have further questions. It appears not. Okay. Thank you, Your Honor. Your bottle. Thank you. Let me be clear that it was a surprise that they were going to rely solely on evidence from a woman who never mailed anything to anyone that the mailings went out. I didn't necessarily think it was going to be a big issue. It wasn't even a focus. I was focusing on the legal issues at that time. So when I got their opposition in the reply, we made proper evidentiary objections under Rule 56, which does require personal knowledge. It's right in the statute. But our cases say that if someone swears to personal knowledge, that generally is adequate. In the Shakur case, S-H-A-K-U-R specifically says it is not adequate unless the underlying facts support the personal knowledge. Yeah, but if she says that she looked at their own business records and the business records contain the information that she swore to, why isn't that adequate? The problem is she didn't say what she looked at. She said, I looked at business records. That's a generic term. She didn't say, I looked at verification from Tri-Win, like counsel speculates. She didn't say, I looked at a bill, an invoice. They billed us for mailing out 1,000. She didn't say what she looked at. She might have just looked at the packet they sent to Tri-Win to be mailed and assumed they were mailed. We just don't know. If the court reverses, they'll have a chance to present better evidence. It's not the end of the day for them. And then the case, and there will be a proper record. But to spring a declaration in their opposition on all I can do is address it at the reply was a little unfair to us, and the court should have sustained the evidentiary objection and make them do a better showing next time around, if that's what they want to do. So, counsel, in your reply, you were going to point me to where in your reply you made this precise argument. Counsel covered that point. I did not specifically. I can't recall specifically addressing the point about whether or not they still exist or anything like that. But I made an evidentiary objection. And the burden is on the moving party to come up with an exception to the hearsay rule. And they've relied on the business record. That's true. And their personal knowledge is a requirement. And she's not a custodian of records of Tri-Win. I do want to say something about this substantive issue, though, because I'm not relying solely on this, although you may suggest it to the contrary. I agree there's no 30-day or 60-day or specific time limit that a company has to send a promotional offer once it's obtained a consumer report for that purpose. But there is a connection requirement. If event A occurs today and event B occurs in 107 days, can it be said that event B was in connection with event A? Maybe. It depends on a lot of facts. It depends on what the events were, why there was a delay, and all that. That's the triable issue of fact here. I'm not saying there's a specific timeline or deadline, but he seems to be saying there is. He seems to be arguing that as long as event B ever happens, if they pull your consumer report today and a year later they send you a promotional offer, that that's okay because there's no specific timeline. There is no specific timeline. But there is a connection, a nexus. Whenever it's said that something has to be connected to something else, that's a factual issue. Factual issues are normally to be decided by a jury, not by a judge as a matter of law. Why, as a matter of law, is it okay to wait 107 days just because there's no specific deadline? That's what the jury should decide. Do you have a case that says whether or not something is done in connection with another event is, as a matter of law, a question of fact? Do you have a case that says that? Whether. Do you have a case that says? No, there's not a case that says what Your Honor just said exactly. But that's your argument. No, my argument is that it's a factual question whether or not something was connected. It's like anything in a criminal. Proximate cause can be decided as a matter of law. That's true. And this could be decided as a matter of law too. If they mailed it the next day, I would say probably as a matter of law, the two are connected. If they mailed it 10 years later, maybe as a matter of law, they're not connected. Do you have a case that says? There's nothing, Your Honor. There's no case on this part of the law. It's completely open. It's a blank slate right now. You're faced with a situation where a judge said, as a matter of law, if they wait 107 days, as a matter of law, that's okay. It can never be a violation. And all I'm saying. The court in this particular case said there is no time limit in the statute. So as a matter of law, 107 days did not violate the statute. That's what the court ruled. The first part of the court's statement was correct. The second part, though, took the matter out of the jury's hands. There is no time limit, but it is for the jury. It was for the jury to decide, except for in extreme examples to one side or to the other side. And here, it's a judge. Did you make the in connection with argument to the district court? I'm sorry? Did you make the in connection with argument to the district court that that was a matter of fact? Yes, yes. This was thoroughly briefed, Your Honor, before the district court. And it's also been well briefed by both sides on this matter. But let me just, if I can just give you this one last example, and then I'm finished. There's an abuse here that could occur. And that's what you should be looking at. Does this even matter? Who cares? Or is there some way this abuses the law? It can abuse the law, and this is what they can do, companies can do. If they want to extend a promotional offer of credit to a large group of consumers, but they would prefer to do it to certain consumers, better credit profiles than the worst credit profiles, they can go by bulk, 10,000 names, and divide them up into groups. And then they can send out the first batch of offers to the best credit people. And if they get enough business that way, then maybe they don't need to send the rest. If they don't, then they move on to second tier and so on and work their way down, which means they're fishing. The whole point of this law is to stop companies from fishing, from pulling people's credit reports and then picking and choosing who they want to get the offers. They're supposed to send them to everyone at the same time, making the exact same offer to everybody. That's explicitly in the statute. Now, we don't know that's what their motive was. We don't know why they did it, because there was no evidence. They never presented any explanation why they waited so long. That's something that should be explored later. Thank you. All right. Thank you, counsel. Thank you both, counsel. The case just argued is submitted for decision by the court. That completes our calendar for today, and we are on recess until 9 a.m. tomorrow morning. All rise.
judges: O'scannlain, Fernandez, Rawlinson